Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE GUAYAMA
PANEL X

| | | |
|---|---|---|
| FÉLIX ARQUER ROMÁN<br><br>Recurrido<br><br>V.<br><br>AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO<br><br>Peticionarios | KLCE202301297 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm.: GM2023CV00640<br><br>Sobre: Recurso Especial de Revisión Judicial para el Acceso a la Información Pública (Ley Núm. 141-2019, según enmendada) |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 12 de enero de 2024.

El 21 de noviembre de 2023, compareció ante este Tribunal de Apelaciones, la Autoridad de Acueductos y Alcantarillados de Puerto Rico (en adelante, AAA o parte peticionaria), por medio de *Certiorari*. Mediante este, nos solicita que revisemos la *Resolución* expedida y notificada el 20 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Guayama, a través de la cual, declaró No Ha Lugar la *Moción de Desestimación de Recurso Especial de Revisión Judicial para el Acceso a la Información Pública* instada por la AAA.

Por los fundamentos que adelante se esbozan, se desestima el recurso de *certiorari* por falta de jurisdicción, por academicidad.

**I**

Los hechos que suscitaron la controversia de epígrafe son los que adelante se esbozan. El 6 de octubre de 2021, el señor Félix

Número Identificador

RES2024 _____

Arquer Román (en adelante, señor Arquer Román o recurrido) objetó ante la AAA una factura que comprendía el periodo de facturación del 29 de julio de 2021 al 24 de septiembre de 2021.[1] El 15 de octubre de 2021, la peticionaria contestó la objeción, indicando que, luego de llevar a cabo la investigación correspondiente, corroboró que la lectura era correcta y que no se encontraron deficiencias en las instalaciones de la AAA, por lo que los cargos facturados para el periodo objetado procedían.

En desacuerdo, el recurrido presentó reconsideración, el 20 de octubre de 2021. En esencia, arguyó que, su historial de muchos años era de consumo mínimo, y que no habían ocurrido roturas en su propiedad.

Más de un año después, específicamente el 17 de abril de 2023, el señor Arquer Román remitió una carta a la AAA, expresando que, aún cuando tuvo una suspensión del servicio de agua en su hogar, pudo percatarse de que los números del contador continuaban registrando consumo. A esos efectos, manifestó que, aparentaba existir una relación entre la suspensión del servicio y el registro inusual de alto consumo plasmado en sus facturas, el cual, insistió, no aceptaba.

En respuesta, el 21 de abril de 2023, la peticionaria cursó una misiva al señor Arquer Román, indicándole nuevamente que, tras la investigación realizada, no se detectaron pérdidas ni salideros atribuibles a la AAA, por lo que se sostenían los cargos facturados. En su carta, la AAA advirtió al recurrido sobre su derecho a solicitar una vista administrativa, al amparo de la Ley Núm. 33 del 27 de junio de 1985[2], en caso de no estar de acuerdo con la decisión. Así pues, el recurrido solicitó la referida vista.[3] Posteriormente, el 12 de

---

[1] Del expediente no surge la objeción presentada por el recurrido.
[2] Conocida como, *Ley para Establecer Requisitos Procesales Mínimos para la Suspensión de Servicios Públicos Esenciales*.
[3] Hacemos constar que, no surge del expediente documento alguno relacionado al trámite de solicitud de vista.

junio de 2023, el recurrido envió otra carta a la AAA. En esencia, sostuvo que, junto a la solicitud de la vista, remitió unas preguntas que debían ser contestadas.

Posteriormente, el recurrido presentó una segunda objeción, relacionada a la factura que comprendía el periodo de consumo del 31 de marzo de 2023 al 30 de mayo de 2023.[4] El 23 de junio de 2023, la AAA envió una comunicación al recurrido, reafirmando los cargos facturados para dicho periodo.

El 28 de junio de 2023, el recurrido remitió otra carta a la AAA, indicando, en esencia, que estaba en desacuerdo con la determinación notificada el 23 de junio de 2023. El mismo mes de junio[5], el señor Arquer Román emitió un escrito a la Ingeniera Doriel Pagán Crespo, Presidente Ejecutiva de la AAA, cuestionando una vez más su facturación.

Así las cosas, el 7 de agosto de 2023, el señor Arquer Román presentó un *Recurso Especial de Revisión Judicial para el Acceso a Información Pública* ante el Tribunal de Primera Instancia, al amparo de la Ley Núm. 141 del 1 de agosto de 2019, conocida como la *Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública*[6] (en adelante, Ley de Transparencia). En virtud de este, sostuvo que, envió una solicitud por correo a la oficina regional de la AAA, dirigida al señor Gabriel García Rivera, requiriendo contestación a un cuestionario, así como que le proveyeran unos documentos. Junto a su petición, el recurrido anejó un documento titulado *Solicitud de Documentos y Cuestionario a la AAA*, el cual contenía dieciocho (18) incisos en los que solicitaba información y documentos a la peticionaria.

---

[4] No surge documento en el expediente sobre dicha objeción.

[5] La carta tiene una corrección a mano que no permite identificar con precisión la fecha de la misma.

[6] 3 LPRA §§ 9911 *et seq.*

El 29 de agosto de 2023, la Secretaría del foro primario expidió una *Notificación* dirigida a la AAA, informando sobre la presentación del recurso especial en su contra. Asimismo, le indicó a esta que contaba con un plazo de diez (10) días laborables, contados a partir de la notificación, para comparecer por escrito. En cumplimiento, el 14 de septiembre de 2023, la AAA presentó una *Moción de Desestimación de Recurso Especial de Revisión Judicial para el Acceso a la Información Pública*. A grandes rasgos, adujo que, en sus sistemas de información no existía evidencia documental alguna de que se hubiese recibido alguna solicitud de información al amparo de la Ley de Transparencia, *supra*, por parte del señor Arquer Román. Como consecuencia de ello, arguyó que el recurso especial no procedía, puesto que la alegada solicitud no le fue notificada, según exige la referida ley. Por otro lado, argumentó que procedía la desestimación, en tanto el propósito del recurrido era obtener información dentro del proceso administrativo, para utilizarla en un potencial litigio. Finalmente, indicó que el recurso especial no cumplía con varios requisitos de la antedicha Ley de Transparencia, *supra*.

El Tribunal de Instancia intimó *Orden* el 5 de octubre de 2023, disponiendo como sigue: "exponga su posición la parte recurrente".[7] El 10 de octubre de 2023, el señor Arquer Román presentó *Moción en Cumplimiento de Orden*. En apretada síntesis, indicó que la AAA se negaba a suministrar la información solicitada, lo que lo privaba de su derecho constitucional a la información.

El 20 de octubre de 2023, el foro primario emitió *Resolución*, declarando No Ha Lugar la solicitud de desestimación presentada por la parte peticionaria. En adición, señaló una vista para el 8 de

---

[7] Apéndice del recurso de *certiorari*, pág. 34.

enero de 2024, a las 10:30 de la mañana, a través de videoconferencia.

Inconforme con la determinación del foro *a quo*, la parte peticionaria acudió ante este foro revisor mediante *Certiorari*, el 21 de noviembre de 2023, y realizó el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Primera Instancia al denegar la Moción de Desestimación de la Autoridad[,] ya que no procede la producción de la información solicitada por el recurrente en su Recurso Especial de Revisión[,] debido a que él nunca ha presentado solicitud al respecto[,] y el propósito de la misma es utilizarla en procedimientos adjudicativos. Tampoco la Autoridad mantiene o genera la información solicitada en el Recurso Especial de Revisión de forma rutinaria, por lo que no existe obligación de producirla. Por último, no procede que se celebre vista al respecto.

Mediante *Resolución* emitida el 5 de diciembre de 2023, le concedimos al recurrido hasta el 11 de diciembre de 2023, para que se expresara en torno al recurso de *Certiorari* incoado. Le apercibimos que, transcurrido el término dispuesto, el recurso se entendería perfeccionado para su adjudicación final.

El 8 de diciembre de 2023, el recurrido presentó *Moci[ó]n para Informar al Honorable Tribunal Falsa Representaci[ó]n de la Autoridad de Alcantarillados de Puerto Rico en cuanto al recibo y posesi[ó]n de Cuestionario y Solicitud de Documentos al amparo de la Ley de Transparencia y Procedimiento Expedito para Acceso a la Informaci[ó]n P[ú]blica (Ley N[ú]m. 141-2019).* Luego, el 13 de diciembre de 2023, instó ante esta Curia, *Moci[ó]n al Honorable Tribunal para Informar Moci[ó]n en Relevo de Sentencia al amparo de la Regla 49.2 presentada el d[í]a 11 de diciembre de 2023 en el Honorable Tribunal de Guayama.* En lo pertinente, informó a través de esta que, el 7 de diciembre de 2023, el foro *a quo* emitió *Sentencia* en el caso de epígrafe, denegando el recurso especial instado.

El 20 de diciembre de 2023 la Autoridad de Acueductos y Alcantarillados interpuso ante este foro apelativo *Moción Informativa sobre Sentencia Emitida por el Tribunal de Primera Instancia.*

**II**

## A. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A)  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C)  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D)  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E)  Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F)  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del

pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

**B. *Jurisdicción***

Nuestra más Alta Curia, ha definido la jurisdicción como el poder que ostentan los tribunales para considerar y decidir los casos y las controversias que sean presentados a su atención. *Beltrán Cintrón v. ELA*, 204 DPR 89, 101 (2020), *Torres Alvarado v Madera Atiles*, 202 DPR 495, 499 (2019); *S.L.G. Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011). Es normativa reiterada que, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, es por lo que, los asuntos relativos a la jurisdicción son privilegiados y deben ser atendidos con prontitud. *Torres Alvarado v Madera Atiles*, supra, pág. 500; *González v. Mayagüez Resort & Casino*, 176 DPR 848, 856 (2009). La ausencia de jurisdicción puede ser levantada *motu proprio*, ya que, esta incide de forma directa sobre el poder del tribunal para adjudicar una controversia. *Allied Management Group, Inc. v Oriental Bank*, 204 DPR 374, 386 (2020); *Torres Alvarado v Madera Atiles*, supra; *Ruiz Camilo v. Trafon Group Inc.,* 200 DPR 254, 268 (2018); *Suffront v. A.A.A.*, 164 DPR

663, 674 (2005). Un tribunal no tiene discreción para asumir jurisdicción donde no la hay, si carece de jurisdicción, deberá así declararlo y desestimar la reclamación sin entrar en sus méritos. *Íd.*; *Mun. De San Sebastián v. QMC Telecom*, 190 DPR 652, 600 (2014).

Cónsono con lo anterior, la Regla 83 del Reglamento del Tribunal de Apelaciones[8], confiere facultad a este Tribunal para, a iniciativa propia o a petición de parte, desestimar un recurso de apelación o denegar un auto discrecional cuando este foro carece de jurisdicción.

### C. *Academicidad*

Como es sabido, los tribunales revisores sólo podremos resolver los casos que sean justiciables. *Super Asphalt v. AFI y otros*, 206 DPR 803, 815 (2021); *Aponte Rosario et al. v. Pres. CEE II*, 200 DPR 400, 451 (2020); *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68 (2017); *Torres Montalvo v. Gobernador ELA*, 194 DPR 760, 766 (2016); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920 (2011). La doctrina de la justiciabilidad de las causas gobierna el ejercicio de la función revisora de los tribunales, fijando la jurisdicción de estos. Dicha doctrina nace del principio elemental de que los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas, que tienen un interés real en obtener un remedio judicial que haya de afectar sus relaciones jurídicas. Esto es, para el ejercicio válido del poder judicial se requiere la existencia de un caso o controversia real. *Smyth, Puig v. Oriental Bank*, 170 DPR 73, 75 (2007) (Opinión de Conformidad). Según lo dispuesto por nuestro Máximo Foro, una controversia no es justiciable cuando: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos

---

[8] 4 LPRA Ap. XXII-B, R. 83.

posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva; o (5) se intenta promover un pleito que no está maduro. *Super Asphalt v. AFI y otros*, supra; *Bhatia Gautier v. Gobernador*, supra, págs. 68-69.

Una de las manifestaciones concretas del principio de justiciabilidad es la doctrina de academicidad. *Super Asphalt v. AFI y otros*, supra; *Smyth, Puig v. Oriental Bank*, supra, pág. 78. Sobre el particular, nuestro más Alto Foro ha reconocido que los tribunales pierden su jurisdicción sobre una controversia cuando, durante el trámite judicial, ocurren cambios fácticos o judiciales que tornan en académica o ficticia su solución. *Super Asphalt v. AFI y otros*, supra, pág. 816; *Bhatia Gautier v. Gobernador*, supra, pág. 73. Esto es, el foro judicial no puede entender sobre un caso que ha perdido su condición de controversia viva y presente en atención a los cambios fácticos o de derecho acaecidos en el transcurso del tiempo. Asimismo, deberán ser evaluados los eventos anteriores, próximos y futuros, a los fines de determinar si la controversia entre las partes sigue viva y subsiste con el tiempo. *Super Asphalt v. AFI y otros*, supra.

Una vez se determina que ha desaparecido el carácter adversativo entre los intereses de las partes involucradas, los tribunales pierden su jurisdicción en el pleito y, por tanto, deben abstenerse de considerar el caso en sus méritos. Con esta limitación sobre el poder de los tribunales, se persigue evitar el uso innecesario de los recursos judiciales y obviar pronunciamientos autoritativos de los tribunales que resulten superfluos. *Smyth, Puig v. Oriental Bank*, supra. Véase también, *Super Asphalt v. AFI y otros*, supra; *Bhatia Gautier v. Gobernador*, supra.

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla al recurso de epígrafe.

**III**

Como Tribunal Apelativo, en primer lugar, nos corresponde auscultar nuestra jurisdicción para atender la controversia ante nuestra consideración. Veamos.

Como reseñáramos, la parte peticionaria presentó el auto de *certiorari* ante esta segunda instancia judicial el 21 de noviembre de 2023. En su recurso, la AAA solicita que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, a través de la cual, denegó una *Moción de Desestimación de Recurso Especial de Revisión Judicial para el Acceso a la Información Pública* presentada por esta, y señaló una vista para el 8 de enero de 2024.

No obstante lo anterior, tras un examen detenido del expediente ante nos, así como del expediente electrónico en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), nos percatamos de que, el 7 de diciembre de 2023, el foro de instancia emitió y notificó *Sentencia* en el presente caso. Esto es, con posterioridad a la presentación del recurso de marras, el foro primario emitió un dictamen final en el mismo.

Cabe destacar que, el recurrido compareció ante nos el 13 de diciembre de 2023, informando sobre la presentación de una moción de relevo de sentencia, ante dicho dictamen. Por otro lado, la peticionaria no nos informó sobre esta incidencia procesal, la cual es trascendental al momento de determinar si ostentamos jurisdicción para entender en el recurso.

Según expuesto, los tribunales revisores sólo podemos resolver los casos que sean justiciables.[9] Una controversia no es justiciable cuando se torna académica. En lo pertinente, nuestra última instancia judicial ha reconocido que, los tribunales pierden

---

[9] *Super Asphalt v. AFI y otros*, supra, pág. 815; *Aponte Rosario et al. v. Pres. CEE II*, supra; *Bhatia Gautier v. Gobernador*, supra, pág. 68; *Torres Montalvo v. Gobernador ELA*, supra; *Asoc. Fotoperiodistas v. Rivera Schatz*, supra.

su jurisdicción sobre una controversia cuando, durante el trámite judicial, ocurren cambios fácticos o judiciales que tornan en académica o ficticia su solución.[10] Los tribunales no pueden entender sobre un caso que ha perdido su condición de controversia viva y presente en atención a los cambios fácticos o de derecho acaecidos en el transcurso del tiempo. En tales casos, la Regla 83(B)(5) y (C) del Reglamento de esta Curia, dispone que, una parte puede solicitar la desestimación de un recurso, o *motu proprio*, el Tribunal podrá desestimar el mismo por falta de jurisdicción.[11]

Indudablemente, el que el tribunal *a quo* haya emitido un dictamen final en el presente caso, provoca que la controversia ante nuestra consideración sea académica. En consecuencia, carecemos de jurisdicción para atenderla. Reiteramos que, cuando un tribunal carece de jurisdicción, deberá así declararlo y desestimar la reclamación sin entrar en sus méritos.[12]

**IV**

Por los fundamentos que anteceden, se desestima el recurso de *certiorari* por falta de jurisdicción, por academicidad.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[10] *Super Asphalt v. AFI y otros*, supra, pág. 816; *Bhatia Gautier v. Gobernador*, supra, pág. 73.

[11] 4 LPRA Ap. XXII-B, R. 83.

[12] *Allied Management Group, Inc. v Oriental Bank*, supra; *Torres Alvarado v Madera Atiles*, supra; *Ruiz Camilo v. Trafon Group Inc.,* supra; *Suffront v. A.A.A.,* supra; *Mun. De San Sebastián v. QMC Telecom*, supra.